

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **LEROY HENRY NEWMAN** | § | |
| xxx-xx-6649 | § | Case No. 17-42515 |
| **and KAREN E. NEWMAN** | § | |
| xxx-xx-5225 | § | |
| 12549 Waltham Dr., Frisco, TX  75035 | § | |
| | § | |
| Debtors | § | Chapter 7 |

| | | |
|---|---|---|
| CIERRA SWAIT and JADEN SWAIT, | § | |
| Minors, by and through their | § | |
| Father, Next Friend and Conservator, | § | |
| JAMES D. SWAIT, JR. | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Adversary No. 18-4010 |
| | § | |
| KAREN ELIZABETH NEWMAN | § | |
| | § | |
| | § | |
| Defendant | § | |

**MEMORANDUM OF DECISION REGARDING
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

This matter came before the Court upon a Motion for Summary Judgment filed by

the Plaintiffs, Cierra and Jaden Swait, Minors, acting by and through their father, James

D. Swait, Jr., in his capacity as next friend and conservator for the two minor Plaintiffs

(the "Plaintiffs"), and the response in opposition filed by the Debtor-Defendant, Karen

Elizabeth Newman (the "Defendant").  The Plaintiffs filed their *Complaint to Determine*

*Dischargeability of Specific Debt Owed by Separate Debtor Karen Newman Under 11*

*U.S.C. § 523(a)(4)* on February 12, 2018, seeking to have the judgment debt owed by the

Defendant, Karen Newman, declared nondischargeable under 11 U.S.C. § 523(a)(4) as a

debt for fraud or defalcation while acting in a fiduciary capacity.  Upon due consideration

of the pleadings, the proper summary judgment evidence which has been submitted,

including the factual determinations that are binding upon the Defendant (and the Court)

through the principles of issue preclusion, and the relevant legal authorities, the Court

concludes that the Plaintiffs have demonstrated that there is no genuine issue as to any

material fact and that they are entitled to judgment as a matter of law that the debt owed

to them by the Defendant, Karen E. Newman, as assignees of the decedent's estate of

Shirley B. Gamble, and as arising from the consent judgment entered by the District

Court of Johnson County, Kansas, is nondischargeable under § 523(a)(4).  This

memorandum of decision disposes of all issues before the Court.[1]

## Factual and Procedural Background[2]

Shirley B. Gamble, a resident of Johnson County, Kansas, passed away testate on

January 4, 2003.[3]  Mrs. Gamble's will was filed with the Probate Department of the

Johnson County, Kansas District Court (the "Kansas Probate Court") in Case No.

03PR110 on February 6, 2003 for administration of Mrs. Gamble's decedent's estate ( the

"Gamble Estate"), and the Debtor-Defendant, Karen E. Newman, was issued Letters

Testamentary to act as Executrix of the Gamble Estate on March 5, 2003.[4]  At all times in

which she acted in her capacity as Executrix of the Gamble Estate, the Defendant was

acting in a fiduciary capacity.[5]  As the Executrix, the Defendant was responsible for all of

the financial activities of the Gamble Estate, including responsibility for all distributions from the Gamble Estate, as well as tendering required financial accounting reports to the Kansas Probate Court.

On October 9, 2007, the Defendant filed a *Petition for Third Amended Final Settlement and Valid Settlement Agreement* with the Kansas Probate Court.[6]  Such Petition was accompanied by a verified accounting of all receipts obtained and disbursements made by the Defendant as Executrix and such accounting revealed Estate receipts of $1,344,563.28 and disbursements of $290,090.06 which, if correct, would leave a balance of $1,054,473.22 belonging to the Gamble Estate.[7]  For reasons unspecified in the summary judgment record, the Kansas Probate Court on November 6, 2007, disapproved the Executrix's accounting and appointed Barry D. Martin as a special administrator "to audit the (Third) Final Account of the Executrix, Karen Newman  . . . , to collect from Ms. Newman and otherwise marshall [sic] the assets of the estate . . . and perform all acts necessary to complete administration and distribution of this estate."[8]

After an examination of the financial records of the Gamble Estate and a litigation dispute over the proper construction of the Gamble will, the special administrator issued a demand upon the Defendant for the return of certain sums that the special administrator contended had been wrongfully taken from the Gamble Estate by the Defendant during her tenure as the Executrix.  When no monies were returned, the special administrator filed a petition before the Johnson County, Kansas Civil District Court in Case No. 10CV4595 on June 18, 2010 (the "Kansas Litigation") seeking, among other things, the

entry of a judgment for damages in the principal amount of $582,548.81 against the

Defendant for alleged breaches of her fiduciary duties as the Executrix of the Gamble

Estate.[9] Specifically, Count I of the state court petition alleged that the Defendant, as

Executrix:

(1)  received "monies wrongfully distributed from the Estate";[10]

(2)  filed a verified accounting with the Kansas Probate Court "which was
inaccurate, false, misleading, and [that] intentionally did not disclose to the
Court disbursements she had made to herself . . . [which] were without
order or decree from the Court and therefore unauthorized";[11]

(3)  engaged in such disbursements that "were wrong and improper, a
breach of the Executrix's fiduciary duties, and caused the Estate assets to be
wrongfully depleted . . .  [thereby] making it impossible to comply with the
Court's order construing the proper legatees of the Estate and their
respective shares";[12]

(4)  "owed a legal and fiduciary duty to the Estate and legatees of the Estate
to properly account for all funds of the Estate and not to disburse funds to
legatees or other parties without prior approval of the Court [and that]
[t]hose duties were breached by defendant, Newman, causing damage to the
Estate and certain legatees of the Estate";[13]

(5)  ". . . made sales of personal property of the Estate without making a
timely report to the Court, and in breach of her legal and fiduciary duties
owed the Estate and its legatees";[14]

(6)  made unauthorized payments to her attorneys "without application to
the court, or approval by the court . . . [and that] payment of such fees
without approval of the Court is a breach of legal and fiduciary duties owed
by defendant Newman, resulting in damages to the Estate";[15]

(7)  ". . . wrongfully refused and intentionally failed and neglected" to
return the funds to the probate estate, "continuing to retain the same for
[her] own use and benefit";[16]

(8)  "owed certain duties to the Estate and the distributees, legatees and

beneficiaries of the Estate, including the duty to administer the Estate consistent with the decedent's Will as interpreted by the Court; [also the duties of] loyalty, impartiality, prudent administration, control and protection of the res and corpus; and a duty to accurately and completely inform and report to the Court the administration of the Estate";[17]

(9)  ". . . was obligated to act in the interests of the Estate, and its authorized distributees, legatees and beneficiaries and to refrain from engaging in self-dealing and the comingling [sic] of assets";[18]

(10)  ". . .  occupied a position of trust and confidence, and utmost good faith [was] required in exercising the powers conferred upon her";[19]

(11)  ". . .  breached her fiduciary duties by:

- comingling [sic] assets of the Estate with her own assets;

- making distribution of Estate assets to herself and other defendants without approval of the Court, contrary to the Will of decedent and then failing to disclose the same to the Court in the accountings filed in the Estate;

- failing to provide a timely and accurate inventory and accounting of the Estate assets and her dealings . . .  as Executrix;

- failing to keep the Estate, and its authorized distributees, legatees and beneficiaries informed as to the status of the Estate matters and of its assets;

- failing to submit to the court a verified final accounting disclosing all receipts and disbursements made by the Executrix, but rather filing with the court inaccurate and false accountings, intentionally concealing wrongful distributions made to herself, her attorney and other defendants;

- wrongfully making distributions and payments to herself [and others] without approval or order

of the Court and not in accordance with the
terms and provisions of decedent's Will;

• failure to properly report and account for
personal property of the Estate sold by her as
Executrix of the estate; and

• wrongfully paying attorney's fees . . . without
making application to the court and obtaining an
order approving said payments."[20]

The Defendant voluntarily appeared in the Kansas Litigation without necessity of

summons and consented to the jurisdiction of the Kansas court.[21]  In lieu of filing an

answer, on March 8, 2011, the Defendant, together with another individual defendant,

reached an agreement with the special administrator and a *Motion for Entry of Consent*

*Judgment Against Separate Defendants Karen Newman and Leon Akins, III* was jointly

filed which documented the parties' prayer for the entry of a consent judgment against

both of the individual defendants for the full amount sought by the special administrator

in the state court petition.[22]  The Defendant individually signed both the joint motion and

the proposed consent judgment.[23]

On August 8, 2011, the Court entered the requested *Consent Judgment Against*

*Separate Defendants Karen Newman and Leon Akins, III* (the "Consent Judgment")

containing the Defendant's signed approval.[24]  The first decretal paragraph of that

judgment stated:

IT IS NOW ORDERED, ADJUDGED AND DECREED that
judgment be and hereby is entered in favor of plaintiff, the Estate of Shirley

> B. Gamble, deceased, and against separate defendant Karen Newman *on Count I of the Petition* in the principal amount of $582,548.81, plus legal interest pursuant to K.S.A. 16-201 of $233,019.52, for a total judgment against separate defendant Karen Newman of $815,568.33. . . . [25]

At the direction of the Kansas Probate Court, the special administrator subsequently assigned the Estate's rights to recover under the Consent Judgment to the designated beneficiaries — the minor Plaintiffs herein, Cierra Swait and Jaden Swait, by and through their father, James D. Swait, Jr., as next friend and conservator for said minors. The amounts due and owing from the Defendant under the Consent Judgment have never been paid.

On November 9, 2017, the Defendant filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court. The Complaint initiating this adversary proceeding was filed by the Plaintiffs on February 12, 2018. The Plaintiffs filed the present motion for summary judgment in this adversary proceeding on September 20, 2018, arguing that under the principles of collateral estoppel, all of the facts necessary to render the Defendant's debt under the Consent Judgment nondischargeable pursuant to 11 U.S.C. § 523(a)(4) was established in the Kansas Litigation.[26] The Defendant filed a response in opposition to the summary judgment motion on October 18, 2018, contending that the principles of collateral estoppel cannot be properly applied in this case.[27]

*Summary Judgment Standards and Process*

The Plaintiffs bring their Motion for Summary Judgment in this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7056. That rule incorporates Federal Rule of Civil Procedure 56 which provides that summary judgment shall be rendered "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[28]

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion.[29] As a movant, a party asserting that a fact cannot be genuinely disputed must support that assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the . . . presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.[30]

The operation of the summary judgment standard depends upon which party will bear the burden of persuasion at trial. "If the moving party bears the burden of persuasion at trial, it must also support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial."[31]

If the motion is supported by a *prima facie* showing that the moving party is entitled to judgment as a matter of law, a party opposing the motion may not rest upon the

mere allegations or denials in its pleadings, but rather must demonstrate in specific

responsive pleadings the existence of specific facts constituting a genuine issue of

material fact for which a trial is necessary.[32]  "A fact is material only if its resolution

would affect the outcome of the action. . . ."[33]  In so demonstrating, the non-movant must

show more than a "mere disagreement" between the parties,[34] or that there is merely

"some metaphysical doubt as to the material facts."[35]  Neither are unsubstantiated,

conclusory assertions in the response sufficient to raise a genuine issue of material fact.[36]

However, "[t]he issue of material fact which must be present in order to entitle a party to

proceed to trial is not required to be resolved conclusively in favor of the party asserting

its existence; rather, all that is required is that sufficient evidence supporting the claimed

factual dispute be shown to require a jury or judge to resolve the parties' differing

versions of the truth at trial."[37]

The record presented is reviewed in the light most favorable to the non-moving

party.[38]  "Where the record taken as a whole could not lead a rational trier of fact to find

for the non-moving party, there is no 'genuine issue for trial.'"[39]  Further, "[o]nly disputes

over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment."[40]  Essentially, if a non-movant fails to set forth

specific facts that present a triable issue on any relevant issues, his claims should not

survive summary judgment.[41]

In this case, the Plaintiffs bear the ultimate burden as to the nondischargeability of

the debt.  Thus, the Plaintiffs are entitled to a summary judgment only if there exists no

genuine issue of material fact as to each essential element under § 523(a)(4).  The motion

for summary judgment under consideration herein seeks judgment as a matter of law

through the application of collateral estoppel.  The Plaintiffs claim that the facts as

established through the entry of the Consent Judgment during the Kansas Litigation are

binding on the Defendant under Kansas law and form the basis for a determination that

the underlying judgment debt is nondischargeable in the Defendant's Chapter 7

bankruptcy case.  Resolving this question requires that the Court first determine the

applicability of the doctrine itself.  If collateral estoppel applies, any relevant factual

findings (i.e., related to the required elements for nondischargeability) regarding the

actions of the Defendant in this common set of operative facts upon which the state court

judgment is based should not be disturbed here.  The Court applies those findings to the

required elements for nondischargeability to ascertain which factual issues, if any,

remain.   If collateral estoppel does not apply, the Plaintiffs' motion must be wholly

denied.

*Standards for Issue Preclusion (Collateral Estoppel).*

"Collateral Estoppel or, in modern usage, issue preclusion, 'means simply that

when an issue of ultimate fact has once been determined by a valid and final judgment,

that issue cannot again be litigated between the same parties in any future lawsuit.'"[42] In

other words, "once an issue is actually and necessarily determined by a court of

competent jurisdiction, that determination is conclusive in subsequent suits based on a

different cause of action involving a party to the prior litigation."[43] "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."[44]

In the bankruptcy dischargeability context, "parties may invoke collateral estoppel in certain circumstances to bar relitigation of issues relevant to dischargeability" and thereby satisfy the elements thereof.[45] In other words, when an issue that forms the basis for a creditor's theory of nondischargeability has been litigated in a prior proceeding, neither the creditor nor the debtor may relitigate those grounds.[46] While the doctrine of issue preclusion applies in bankruptcy dischargeability litigation, a bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable.[47]

The inquiry into the preclusive effect of a state court judgment is guided by the Full Faith and Credit Act, which states that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C.A. § 1738 (West 2006).[48] "It has long been established that § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and *commands* a federal court to accept the rules chosen by the State from which the judgment is taken."[49] Effectively, the "Full Faith and Credit Act expands the Full Faith and Credit Clause and requires federal courts to give

full faith and credit to state court proceedings."[50] Thus, federal courts are not free to

ignore the principles of issue preclusion utilized by the forum state in which the prior

judgment was entered.[51]

     Because the judgment against the Defendant was entered in a Kansas state court,

this Court is required to apply the Kansas law of issue preclusion.[52] "The requirements of

collateral estoppel are: (1) a prior judgment on the merits which determined the rights

and liabilities of the parties on the issue based upon ultimate facts as disclosed by the

pleadings and judgment, (2) the parties must be the same or in privity, and (3) the issue

litigated must have been determined and necessary to support the judgment."[53] As the

party asserting the preclusive effect of any findings arising from the Kansas Litigation,

the Plaintiffs have the burden of proof on all elements of collateral estoppel.

     The first two requirements for the application of collateral estoppel principles

under Kansas law are easily met. The Defendant admits that she agreed to the entry of

the Consent Judgment in favor of the Gamble Estate.[54] Kansas law provides that a

consent judgment constitutes a judgment on the merits.[55] Further, the Defendant

acknowledges that the current Plaintiffs are her legitimate judgment creditors by

assignment of the Consent Judgment by the Gamble Estate.[56] Thus, this adversary

proceeding involves the original parties, or parties in privity with the parties, that

participated in the Kansas Litigation.

     Though not clearly presented in the context of the Kansas collateral estoppel

factors, the Defendant clearly challenges the Plaintiffs' proposition that the Consent

Judgment can give rise to issue preclusion.  Although the Defendant admits that she agreed to the entry of the Consent Judgment, she now wishes to dispute that she engaged in any breach of her fiduciary duty as Executrix, that she made improper disbursements without probate court approval, and that she filed false or misleading pleadings before the Kansas Probate Court.[57]  She contends that the entry of the Consent Judgment cannot properly be construed as an admission of the allegations of the underlying petition in the Kansas Litigation and that principles of issue preclusion (presumably from any applicable jurisdiction) cannot be properly applied against her to preclude her from contesting any allegation of misconduct before this Court.[58]  In support of that position, the Defendant claims that "federal courts take a different view of consent decrees than state courts for collateral estoppel purposes"[59] and that the Consent Judgment "does not meet the standards set forth by the Fifth Circuit for collateral estoppel effect."[60]

There is legal authority in many jurisdictions to support the Defendant's position. Many have undoubtedly adopted collateral estoppel standards which foreclose the application of issue preclusion principles arising from a consent judgment because of a concern that the matter could have settled for various reasons and has not been "actually litigated" between the parties.[61]  Others limit the applicability of the doctrine to those consent judgments in which the parties expressly manifest an intention to be bound by such principles.[62]  However, none of that legal authority is properly applicable to *this* particular case.

Though likely within a distinct minority of jurisdictions, Kansas courts have consistently recognized that a consent judgment triggers issue preclusion principles under Kansas law.  As articulated by the Supreme Court of Kansas, "[a] judgment entered by consent of the parties or their attorneys is as conclusive on matters in issue as one rendered after contest and trial."[63]  Accordingly,

> [T]he rule precluding the relitigation of questions which were in issue and adjudicated in a former action is commonly applied to all matters essentially connected with the subject matter of the litigation. It extends to questions necessarily involved in an issue and necessarily adjudicated, or necessarily implied in the final judgment, although no specific finding appears in the journal entry of judgment and although such matters may not have been specifically averred in the pleadings. If a judgment could not have been rendered without deciding a particular matter, that matter will be settled as to all future actions between the parties involving the same subject matter. When a judgment necessarily presupposes certain findings on issues presented these issues are as conclusive as the judgment itself.  A judgment adjudicates all matters which are essential to support it and every proposition leading up to the final conclusion of the court upon which such judgment is necessarily based is as effectually adjudicated as the ultimate question which is finally determined in the journal entry of judgment.[64]

The *Neville* court emphasized that all litigants must avoid a lack of diligence and are charged with a duty to pursue and present all defenses then available prior to any decision to enter into a judgment by consent.[65]  Thus, "having consented to the judgments . . . they are now estopped to question the particular matter upon which the prior [consent] judgments necessarily rest. . . ."[66]  Thirty years later, the Supreme Court of Kansas

confirmed that "a consent judgment has collateral estoppel effect."[67]

Thus, if being considered by a Kansas court, the Consent Judgment, under which the Defendant agreed that the Plaintiffs should recover $815,568.33 plus ancillary relief from her "on Count I of the Petition," would now under the principles of Kansas collateral estoppel preclude the Defendant from contesting in a second lawsuit by and among the parties that she breached numerous fiduciary duties as Executrix of the Gamble Estate which caused damages to the Plaintiffs as legatees and beneficiaries of the decedent's estate.  Count I of the state court petition dealt solely with the Defendant and the alleged factual occurrences establishing her alleged liability for various breaches of fiduciary duty and other misconduct occurring during her tenure as Executrix.  Such allegations of misconduct stand as the only source of liability faced by the Defendant as a result of Count I.  There are no other causes of action alleged in Count I.[68]  An agreement by the Defendant to liability under Count I could only be based on the asserted breaches of fiduciary duty.  Under Kansas law, those focused allegations contained in Count I would be viewed as necessarily adjudicated or implied by the Defendant's agreement to the entry of the Consent Judgment based upon that specific, singular cause of action and would serve as the necessary factual foundation for the assessment of liability against the Defendant as reflected in that judgment.  The facts establishing that foundation would be deemed "as conclusive as the judgment itself."[69]  Though the Defendant correctly asserts that "[t]here is no finding by the Johnson County court that by entering into the consent judgment, she admitted those allegations,"[70] no such express finding is required under

Kansas law for collateral estoppel to apply in this context.  Indeed no express finding of

any kind is required and a preclusive effect could have attached under the applicable

Kansas jurisprudence with statements of misconduct far less specific than is actually

presented in the factual allegations against the Defendant appearing in Count I.  Under

Kansas law, therefore, the specific issues regarding the Defendant's alleged misconduct

as Executrix as set forth in Count I would be deemed "determined and necessary" to the

Consent Judgment and would preclude the Defendant from relitigation of the breach of

fiduciary issues in a Kansas court.

However, without refuting the applicability and the impact of Kansas law, the

Defendant simply chooses to declare that "[E]ven if Kansas considers a consent judgment

a full adjudication on the merits of the issues, the Bankruptcy Court cannot simply adopt

that position."[71]  No support for that proposition is actually offered by the Defendant.

While generic citations from the Fifth Circuit about the applicability of collateral estoppel

are provided (without specifying the particular law being applied in any particular case)

and while there is a subtle suggestion that a federal rule of collateral estoppel might in

fact be applicable, the Defendant wholly fails to address how Kansas law can be ignored

or sidestepped in light of the mandates imposed upon this Court by the Full Faith and

Credit Act.

Again, the Full Faith and Credit Act mandates that the judicial proceedings of any

State "shall have the same full faith and credit in every court within the United States  . . .

as they have by law or usage in the courts of such State  . . .  from which they are taken."

28 U.S.C.A. § 1738 (West 2006).  As noted by the United States Supreme Court, the

significance of this requirement cannot be overstated when considering the impact of a

state court judgment:

> Regarding judgments, however, the full faith and credit obligation is
> exacting.  A final judgment in one State, if rendered by a court with
> adjudicatory authority over the subject matter and persons governed by the
> judgment, qualifies for recognition throughout the land.  For claim and
> issue preclusion (res judicata) purposes, in other words, the judgment of the
> rendering State gains nationwide force.[72]

A series of relatively recent Supreme Court decisions not only informs our understanding

of the significance of § 1738, they collectively dictate the manner in which this Court

must evaluate the Defendant's suggestion that Kansas preclusion law may be rejected in

this context.  One of those decisions, *Matsushita Elec. Indus. Co., Ltd. v. Epstein*, 516

U.S. 367, 116 S. Ct. 873, 134 L. Ed. 2d 6 (1996), provides a clear distillation of the

process that is required to be followed.  As a general introduction, the Supreme Court

observes:

> The Act thus directs all courts to treat a state court judgment with the same
> respect that it would receive in the courts of the rendering state.  Federal
> courts *may not* employ their own rules  . . .  in determining the effect of
> state judgments, but *must accept* the rules chosen by the State from which
> the judgment is taken.[73]

That mandate is applicable, notwithstanding the fact that this Court in this

dischargeability adversary is exercising exclusive federal jurisdiction under 28 U.S.C. §

1334.  As the Court in *Matsushita* observed,

> [Section] 1738 is not irrelevant simply because the judgment in question
> might work to bar the litigation of exclusively federal claims. Our decision
> *in Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373,
> 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985), made clear that where § 1738 is
> raised as a defense in a subsequent suit,[74] the fact that an allegedly
> precluded claim is within the exclusive jurisdiction of the federal courts
> does not necessarily make § 1738 inapplicable . . .   Accordingly, we
> decided [in *Marrese*] that a state court judgment may in some circumstances
> have preclusive effect in a subsequent action within the exclusive
> jurisdiction of the federal courts.[75]

*Matsushita* then presented the appropriate approach as outlined in *Marrese*:

> *Marrese* provides the analytical framework. . . .  When faced with a state
> court judgment relating to an exclusively federal claim, a federal court must
> first look to the law of the rendering State to ascertain the effect of the
> judgment.[76]  If state law indicates that the particular claim or issue would be
> barred from litigation in a court of that state, then the federal court must
> next decide whether, as an exception to § 1738, it should refuse to give
> preclusive effect to [the] state court judgment.[77]

The Supreme Court concluded that, "[I]n the absence of federal law modifying the

operation of § 1738, the preclusive effect in federal court of [a] state-court judgment is

determined by [state] law."[78]

Since Kansas courts would apply issue preclusion principles to the Consent

Judgment issued in the Kansas Litigation, one then must turn to consider whether a

dischargeability determination under 11 U.S.C. § 523(a) in a bankruptcy adversary

proceeding constitutes an exception to the application of § 1738 that would authorize this

Court to refuse to grant the issue preclusion protection which otherwise would be

imposed by Kansas courts.  Again, *Marrese* guides us on this journey:

> Only if state law indicates that a particular claim or issue would be barred,
> is it necessary to determine if an exception to § 1738 should apply. . . .
> [T]he more general question is whether the concerns underlying a particular
> grant of exclusive jurisdiction justify a finding of an implied partial repeal
> of § 1738?  Resolution of this question will depend on the particular federal
> statute as well as the nature of the claim or issue involved in the subsequent
> federal action.  Our previous decisions indicate that the primary
> consideration must be the intent of Congress.[79]

The Supreme Court observed in *Matsushita* that "[a]s a historical matter, we have seldom,

if ever, held that a federal statute impliedly repealed § 1738."[80]  It specifically noted that

"[t]he rarity with which we have discovered implied repeals is due to the relatively

stringent standard for such findings, namely, that there be an 'irreconcilable conflict'

between the two federal statutes at issue."[81]  The assertion of such a conflict to prevent

the application of preclusion principles has been repeatedly rejected by the Supreme

Court, particularly when solely rooted in the existence of exclusive federal jurisdiction.[82]

Though we laboring in the "bankruptcy bubble" often speak in too reverent tones

about the exclusivity of the bankruptcy process, its special nature, and the social utility of

the purposes for which the Bankruptcy Code was created, the argument that the

uniqueness of the bankruptcy statutory scheme could exempt bankruptcy matters from the

purview of § 1738 has already been rejected in this circuit.  In rejecting a debtor-

defendant's argument that a Texas state court judgment should not be given preclusive

effect in a nondischargeability case brought under § 523(a)(2) and (a)(6) of the

Bankruptcy Code because bankruptcy is an "area [] where Congress has indicated a

special federal interest," the Fifth Circuit, after acknowledging that *Marrese* created an

opportunity to find an express or implied repeal of the full faith and credit statute,

nevertheless concluded that "[T]he finding of a state court in the context of a federal

bankruptcy discharge is, however, not such an area."[83]

Therefore, because there is no express or implied repeal of § 1738 for

dischargeability actions brought under § 523(a)(4) of the Bankruptcy Code, this Court is

compelled under the Full Faith and Credit Act to give the same issue preclusion

protections to the Consent Judgment issued in the Kansas Litigation as would be afforded

to that judgment by a Kansas court, and thereby the Defendant is legally precluded from

seeking to relitigate those issues regarding her misconduct as Executrix as set forth in

Count I of the state court petition which are deemed determined in support of the Consent

Judgment under Kansas law.  However, notwithstanding the application of collateral

estoppel principles, the Court must ascertain whether those established factual findings

are sufficient to fulfill the elements of the dischargeability claims brought by the

Plaintiffs under 11 U.S.C. § 523(a)(4).

*Section 523(a)(4): Debt for Fraud or Defalcation While Acting in a Fiduciary Capacity*

11 U.S.C. § 523(a)(4) provides that "[a] discharge under 11 U.S.C.§ 727 does not

discharge an individual from any debt — for fraud or defalcation while acting in a

fiduciary capacity, embezzlement or larceny."  The Fifth Circuit has noted "that this

discharge exception was intended to reach those debts incurred through abuses of

fiduciary positions and through active misconduct whereby a debtor has deprived others

of their property by criminal acts; both classes of conduct involve debts arising from the

debtor's acquisition or use of property that is not the debtor's."[84]  Whether the actions of

an individual were taken in a fiduciary capacity for the purposes of § 523(a)(4) is

determined by federal law.[85]  However, "state law is important in determining whether or

not a trust obligation exists."[86]

The Fifth Circuit has discussed the concept of a fiduciary under § 523(a)(4) in the

following terms:

> [T]he concept of fiduciary under § 523(a)(4) is narrower than
> it is under general common law.  Under § 523(a)(4),
> "fiduciary" is limited to instances involving express or
> technical trusts.  The purported trustee's duties must,
> therefore, arise independent of any contractual obligation.
> The trustee's obligations, moreover, must have been imposed
> prior to, rather than by virtue of, any claimed
> misappropriation or wrong.  Constructive trusts or trusts *ex
> malificio* thus also fall short of the requirements of
> § 523(a)(4).
> . . . Statutory trusts, by contrast, can satisfy the dictates of
> § 523(a)(4).  It is not enough, however, that a statute purports
> to create a trust:  A state cannot magically transform ordinary
> agents, contractors, or sellers into fiduciaries by the simple

**Page 21 of  31**

> incantation of the terms "trust" or "fiduciary." Rather, to
> meet the requirements of § 523(a)(4), a statutory trust must
> (1) include a definable res and (2) impose "trust-like" duties.[87]

However, the trust relationship must exist prior to the creation of, and without reference to, the indebtedness in question.[88]

The Fifth Circuit has recognized that the "technical" or "express" trust requirement is not limited to trusts that arise by virtue of a formal trust agreement, but includes relationships in which trust-type obligations are imposed pursuant to statute or common law.[89] Federal courts in this context have "not hesitated to conclude that debts arising from misappropriation by persons serving in a traditional, pre-existing fiduciary capacity, as understood by state law principles, are non-dischargeable."[90] Kansas law clearly holds that an executor or executrix of a decedent's estate "acts in a fiduciary capacity and is held to the utmost good faith in his transactions regarding the estate."[91] Indeed the Defendant admits that she acted in a fiduciary capacity as the executrix of the Gamble Estate.[92] The Defendant's exercise of authority and control over funds obtained in her fiduciary capacity as Executrix of the Gamble Estate is thus sufficient to establish the necessary trust-type relationship required for nondischargeability purposes under § 523(a)(4).[93]

As to the remaining element of nondischargeability under § 523(a)(4), the factual findings deemed as established under Kansas collateral estoppel law create a sufficient factual basis to support a conclusion that the Defendant committed a defalcation while

acting in her fiduciary capacity.  Under the United States Supreme Court decision in

*Bullock v. BankChampaign, N.A.*,[94] in which it rejected an objective recklessness standard

in favor of a heightened culpability standard for defalcation under § 523(a)(4),  the

Supreme Court declared that such defalcation "includes a culpable state of mind

requirement" involving "knowledge of, or gross recklessness in respect to, the improper

nature of the relevant fiduciary behavior."[95]  According to *Bullock*, "where the conduct at

issue does not involve bad faith, moral turpitude, or other immoral conduct, the term

[defalcation] requires an intentional wrong."[96]  Such an intentional wrong encompasses

not only conduct which the fiduciary knows is improper, but it also encompasses reckless

conduct,[97] such as when a fiduciary "consciously disregards (or is willfully blind to) a

substantial and unjustifiable risk" that his conduct will result in a breach of fiduciary

duty.[98]

 In this case, through the Kansas principles of collateral estoppel imposed by the

full faith and credit statute, the Plaintiffs have established that the Defendant engaged in

numerous intentional wrongs in breach of her fiduciary duties owed to the Gamble Estate.

She knowingly engaged in wrongful disbursements from the Estate to benefit herself and

related third parties in contravention of her duties under the will.  She knowingly filed

false accountings with the Kansas Probate Court to conceal those wrongful distributions.

She wrongfully and intentionally failed to account for the assets of the decedent's estate

under her charge and control to the Plaintiffs' financial detriment by retaining the

diverted funds for her own use and benefit.  When the Defendant engaged in her

intentional failure to account and to deliver the funds received in trust from the decedent's

estate, and instead utilized them for her own purposes, she knew of the improper nature of

her behavior and possessed a "culpable state of mind" with regard to her actions.  As a

result of the Defendant's actual knowledge of the improper nature of her conduct toward

the Plaintiffs, the damages evidenced by the Consent Judgment are rendered

nondischargeable under §523(a)(4) as arising from defalcations committed by the

Defendant while acting in a fiduciary capacity.

## Conclusion

Accordingly, upon due consideration of the pleadings, the proper summary

judgment evidence, the relevant legal authorities and for the reasons set forth herein,

including the legal conclusion that the Defendant is precluded from controverting any of

the facts that are established under the Kansas law of issue preclusion by the entry of the

Consent Judgment, the Court concludes that there is no genuine issue as to any material

fact germane to a determination of dischargeability under the complaint and that the

Plaintiffs, Cierra and Jaden Swait, Minors, acting by and through their father, James D.

Sw[1]ait, Jr., in his capacity as next friend and conservator for the two minor Plaintiffs, are

entitled to a summary judgment that the debt now owed to them by the Debtor-Defendant,

Karen E. Newman, arising from the Consent Judgment entered by the Johnson County,

Kansas Civil District Court in Case No. 10CV4595, is nondischargeable under the

provisions of 11 U.S.C. § 523(a)(4).  The Court further concludes that the Plaintiffs'

recovery of $350.00 in court costs expended in the filing of the adversary complaint is

also proper under 28 U.S.C. § 1920.

     An appropriate order and a judgment will be entered which is consistent with this

opinion.

Signed on 02/26/2019

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

1.  This Court has authority to enter a final judgment in this adversary proceeding since it statutorily constitutes a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(I) and (O) and meets all constitutional standards for the proper exercise of full judicial power by this Court.

2. The facts presented are those which stand uncontested or resolved by final judgment between the parties and enforced by the principles of issue preclusion as set forth herein.  They are presented only as a general factual background to the legal claims asserted in the case.  This section is not intended to resolve any disputed or contested facts.

3.  Ex. 6 (The numbered exhibits are attached to the Affidavit of Barry D. Martin, tendered as Ex. A to the Plaintiffs' Motion for Summary Judgment, but subsequent citations to the numbered exhibits shall reference only the exhibit number).

4.  Admitted fact through Defendant's Answer at ¶ 24.

5.  Admitted fact through Defendant's Answer at ¶ 33.

6.  Ex. 2.  No settlement agreement was actually attached to this accounting.

7. *Id.*

8.  Ex. 1.

9.  Ex. 6.  Such assessments were sought under Count I of the state court petition.

10.  *Id.* at  ¶ 12.

11.  *Id.* at  ¶ 17.

12.  *Id.* at  ¶ 18.

13.  *Id.* at  ¶ 20.

14.  *Id.* at  ¶ 21.

15.  *Id.* at  ¶ 22.

16.  *Id.* at  ¶ 25.

17.  *Id.* at  ¶ 27.

18.  *Id.* at  ¶ 28.

19.  *Id.* at  ¶ 29.

20.  *Id.* at  ¶ 30(a)-(h).

21.  Ex. 7.

22.  Ex. 8.

23.  *Id.*

24.  Ex. 9.

25.  *Id.* at 2 (emphasis added).

26.  Dkt. #16.

27.  Dkt. #17.

28.  FED. R. CIV. P. 56(a).

29.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

30.  FED. R. CIV. P. 56(c).

31.  *Sell v. Universal Surveillance Sys., LLC*, 2017 WL 3712188, at *3 (W.D. Tex. July 6, 2017) (citing *Celotex*, 477 U.S. at 331 (Brennan, J., dissenting)).

32.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010).

33.  *Wiley v. State Farm Fire & Cas. Co.,* 585 F.3d 206, 210 (5th Cir. 2009); *accord Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

34.  *Calpetco 1981 v. Marshall Exploration, Inc.*, 989 F.2d 1408, 1413 (5th Cir. 1993).

35.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

36.  *McCarty v. Hillstone Rest. Group, Inc.*, 864 F.3d 354, 357 (5th Cir. 2017).

37. *Anderson*, 477 U.S. at 248-49 (citing *First Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968)).

38. *Matsushita,* 475 U.S. at 587.

39.  *Id.*

40.  *Anderson,* 477 U.S. at 248.

41.  *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 494 (5th Cir. 2001).

42.  *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (internal quotations omitted).

43.  *Montana v. U. S.*, 440 U.S. 147, 153 (1979) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)).

44.  *Id.* at 153-54.

45.  *Raspanti v. Keaty (In re Keaty)*, 397 F.3d 264, 270 (5th Cir. 2005) (quotation marks omitted).

46.  *RecoverEdge, L.P. v. Pentecost,* 44 F.3d 1284, 1294 (5th Cir. 1995).

47.  *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991).

48.  In the vernacular of the Supreme Court, § 1738 "implements" the Full Faith and Credit Clause of the United States Constitution – U.S. Const., Art. IV, § 1.  *Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 80, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984).

49.  *Shimon v. Sewerage & Water Bd. Of New Orleans*, 565 F.3d 195, 199 (5th Cir. 2009) (emphasis added)[(citing *Parsons Steel, Inc. v. First Ala. Bank,* 474 U.S. 518, 523, 106 S.Ct. 768, 88 L.Ed.2d 877 (1986)) and *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 481–82, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982)).

50.  *Davis v. Chase Home Finance, LLC,* 597 F. App'x 249, 252 (5th Cir. 2015).

51.  *Schwager v. Fallas (In re Schwager),* 121 F.3d 177, 181 (5th Cir. 1997).

52.  *Ingalls v. Erlewine (In re Erlewine),* 349 F.3d 205, 210 (5th Cir. 2003)*; Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir. 1996).

53.  *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 1023, 58 P.3d 1284 (2002); *Matter of K.C.S.*, 420 P.3d 500, 2018 WL 2994273, at *4 (Kan. Ct. App. 2018).

54.  ¶ 13 of Defendant's Response.

55.  *Honeycutt By & Through Phillips v. City of Wichita*, 251 Kan. 451, 458, 836 P.2d 1128, 1133 (1992)*; Guillan v. Watts,* 249 Kan. 606, 685, 822 P.2d 582, 589 (1991).

56.  ¶¶ 10 and 17 of Defendant's Response.

57.  ¶¶ 14 and 16 of Defendant's Response.

58.  ¶ 13 of Defendant's Response.

59.  ¶ 22 of Defendant's Response.

60.  ¶ 8 of Defendant's Response.

61.  *See, e.g.*, 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4443, pp. 257-258 (2017)  ["In *most* circumstances, it is recognized that consent agreements *ordinarily* are intended to preclude any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented. Thus consent judgments ordinarily support claim preclusion but not issue preclusion."] (emphasis added).

62.  *See, e.g., Arizona v. California*, 530 U.S. 392, 414, 120 S. Ct. 2304, 2319, 147 L. Ed. 2d 374 (2000), supplemented, 531 U.S. 1, 121 S.Ct. 292, 148 L.Ed.2d 1 (2000) [recognizing that, under application of federal preclusion principles, ". . .settlements *ordinarily* occasion no issue preclusion (sometimes called collateral estoppel), unless it is clear, as it is not here, that the parties intend their agreement to have such an effect."] (emphasis added); *Hughes v. Santa Fe Intern. Corp.*, 847 F.2d 239, 241 (5th Cir. 1988)

[recognizing same standard under Texas issue preclusion principles].

63. *Neville v. Hennigh,* 214 Kan. 681, 685, 522 P.2d 443, 446 (1974). This is apparently rooted in a long line of Kansas cases holding that "[W]here a judgment is agreed to by the parties, it has the same binding effect as any other judgment." *Meyer v. Meyer,* 209 Kan. 31, 39, 495 P.2d 942, 949 (1972) (citing *Union Pac. Railway Co. v. McCarty,* 8 Kan. 125, 132 (1871); *Baldwin v. Baldwin,* 150 Kan. 807, 96 P.2d 614, 617 (1939)).

64. *Id*. at 214 Kan. 688-89, 522 P.2d at 448-49 (citations omitted).

65. *Id*. at 214 Kan. 689, 522 P.2d at 449.

66. *Id*.

67. *Crist v. Hunan Palace, Inc*., 277 Kan. 706, 717, 89 P.3d 573, 581 (2004).

68. Thus, the third Kansas collateral estoppel factor is established in this instance as opposed to a case in which a judgment awards damages on a petition containing alternative theories of liability and the judgment fails to specify which of the various theoretical bases serves as the actual basis of liability — thereby precluding a finding that any particular basis is necessary to support the judgment. *See, e.g., Calvin Opp Concrete, Inc. v. Davis (In re Davis)*, 2013 WL 3776363, at *4 (Bankr. D. Kan. July 13, 2013).

69. *Neville,* 214 Kan. at 688, 522 P.2d at 449.

70. ¶ 38 of Defendant's Response.

71. ¶ 23 of Defendant's Response.

72. *Baker v. General Motors Corp*., 522 U.S. 222, 233, 118 S.Ct. 657, 663-64, 139 L.Ed.2d 580 (1998) in which the Supreme Court also rejected the idea that there was any "roving public policy exception to the full faith and credit due judgments" or that equity decrees were somehow outside the scope of the full faith and credit requirement. *Id*.

73. *Matsushita,* 516 U.S. at 373, 116 S. Ct. at 877 (emphasis added) (internal quotations omitted) (citing *Kremer v. Chemical Constr. Corp*., 456 U.S. 461, 481–82, 102 S.Ct. 1883, 1898, 72 L.Ed.2d 262 (1982).

74. The Supreme Court in *Marrese* recognized that "[S]ection 1738 embodies concerns of comity and federalism that allow the States to determine, subject to the requirements of the statute and the Due Process Clause, the preclusive effect of judgments in their own courts." *Marrese,* 470 U.S. at 380, 105 S.Ct. at 1332.

75. *Id.,* 516 U.S. at 374, 116 S. Ct. at 878 (internal quotations omitted) (citing *Marrese,* 470 U.S. at 380, 105 S.Ct. at 1332).

76. *Id.,* 516 U.S. at 375, 116 S. Ct. at 878 (internal quotations omitted) (citing *Marrese,* 470 U.S. at 381-82, 105 S.Ct. at 1332-33).

77.  *Id.* (internal quotations omitted) (citing *Marrese,* 470 U.S. at 383, 105 S.Ct. at 1333).

78.  *Id.* (citing *Migra,* 465 U.S. at 80, 104 S.Ct. at 896.

79.  *Marrese,* 470 U.S. at 386, 105 S.Ct. at 1335.

80.  *Id.,* 516 U.S. at 380, 116 S. Ct. at 881.

81.  *Matsushita,* 516 U.S. at 381, 116 S. Ct. at 881 (citing *Kremer,* 456 U.S. at 468, 102 S.Ct. at 1890).

82.  A limitation upon the application of preclusion principles through an implied repeal of § 1738 has been rejected with reference to the following federal statutes:  (1) 42 U.S.C. § 1983 as to issue preclusion [*Allen v McCurry,* 449 U.S. 90, 96-105, 101 S.Ct. 411, 415-421, 66 L.Ed.2d 308 (1980)]; (2) 42 U.S.C. § 1983 as to claim preclusion [*Migra v. Warren City School Dist. Bd. of Ed.*, 465 U.S. 75, 83-85, 104 S.Ct. 892, 897-98, 79 L.Ed.2d 56 (1984)]; (3) Title VII of the Civil Rights Act of 1964 [*Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 468-76, 102 S.Ct. 1883, 1890-95, 72 L.Ed.2d 262 (1982)]; (4) the Anti-Injunction Act – 28 U.S.C. §2283 [*Parsons Steel, Inc. v. First Ala. Bank,* 474 U.S. 518, 523-24, 106 S.Ct. 771-72, 88 L.Ed.2d 877 (1986)]; and (5) Section 27 of the Securities and Exchange Act of 1927 - 15 U.S.C. § 78a [*Matsushita,* 516 U.S. at 380-86, 116 S. Ct. at 881-83].

83.  *Garner v. Lehrer (In re Garner)*, 56 F.3d 677, 680-81 (5th Cir. 1995) [finding further support in the Supreme Court's clarification in *Grogan v. Garner*, 498 U.S. 279, 284 n.11 (1991) that collateral estoppel principles apply to dischargeability determinations under § 523(a) of the Bankruptcy Code]; *see also*, *Harris v. Byard (In re Byard)*, 47 B.R. 700 (Bankr. M.D. Tenn. 1985) (Lundin, J.) [concluding that issue preclusion would apply to a <u>default</u> judgment under Kansas law and that, under the *Marrese* analysis, there is no compelling statement of federal bankruptcy law under § 523(a)(2), (a)(4) or (a)(6) which would expressly or impliedly forbid application of § 1738 to apply issue preclusion principles derived from a Kansas default judgment]; *but cf. Gilmore v. Gilmore (In re Gilmore)*, 2004 WL 2044116, at *4 (Bankr. D. Kan. July 16, 2004) in which the Court proffers § 523(a)(5)(B) of the Bankruptcy Code as an example of an implied repeal of § 1738 in which a liability "designated as alimony, maintenance, or support" that has been imposed by a state court is not excepted from discharge unless it "is actually in the nature of alimony, maintenance, or support" after a determination of the true nature of the liability by the bankruptcy court.  However, as the Gilmore court notes, "[S]ections 523(a)(2), (4), and (6), by contrast, contain no similar restrictions on the effect a state court judgment can have on proceedings under their provisions." *Id.*

84.  *Miller v. J.D. Abrams Inc. (Matter of Miller),* 156 F.3d 598, 602 (5th Cir.1998), *cert. denied*, 526 U.S. 1016 (1999) (internal quotations omitted).

85.  *FNFS, Ltd. v. Harwood (In re Harwood),* 637 F.3d 615, 620 (5th Cir. 2011).

86.  *Gupta v. Eastern Idaho Tumor Institute, Inc. (In re Gupta)*, 394 F.3d 347, 350 (5th Cir. 2004).

87.  *Texas Lottery Comm'n v. Tran (In re Tran),* 151 F.3d 339, 342-43 (5th Cir. 1998).

88.  *Angelle v. Reed (In re Angelle)*, 610 F.2d 1335, 1338 (5th Cir. 1980).

89.  *FNFS, Ltd. v. Harwood (In re Harwood)*, 404 B.R. 366, 393 (Bankr. E.D. Tex. 2009) (citing *LSP Inv. Partnership v. Bennett (In re Bennett)*, 898 F.2d 779, 784-85 (5th Cir.), *cert. denied*, 510 U.S. 1011

(1993)).

90. *Shcolnik v. Rapid Settlements, Ltd. (In re Shcolnik)*, 670 F.3d 624, 628 (5th Cir. 2012) (citing *Gupta*, 394 F.3d at 350).

91. *Stump v. Flint*, 195 Kan. 2, 9, 402 P.2d 794, 800 (1965); *Matter of Estate of Hessenflow*, 21 Kan. App. 2d 761, 776, 909 P.2d 662, 672 (1995), *rev. denied*, 259 Kan. 928 (1996) ["From the plain language of the statute [K.S.A § 59-102], an executor is a fiduciary. . . .  The position of executor . . . is a trust; it is fiduciary in character and its holder is a trustee for all persons interested in the estate. . . ."].

92. ¶ 36 of Defendant's Response.

93. *Tran,* 151 F.3d at 343-45.  Specifically, the Fifth Circuit has directed that "the central focus of the inquiry under § 523(a)(4) [is] whether the alleged fiduciary exercises *actual control* over the alleged beneficiary's money or property. . . . [I]t is clear that the issue of control has always been the critical fact looked to by the courts in imposing this high level of responsibility."  *Id.* at 345 (emphasis added).

94. 569 U.S. 267, 133 S.Ct. 1754, 185 L.Ed.2d 922 (2013).

95. *Id.* at 269, 133 S.Ct. at 1757

96. *Id.* at 273, 133 S.Ct. at 1759.

97. The *Bullock* Court described such reckless conduct as "the kind set forth in the Model Penal Code §2.02(2)(c)" and tracks that necessary to prove scienter in federal securities cases.  Scienter, in the context of securities fraud, is "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12 (1976).  *Bullock* therefore seeks to eliminate from the scope of § 523(a)(4) the type of recklessness arising as a consequence of mere negligence or inadvertence.

98. *Bullock,* 569 U.S. at 273-74, 133 S.Ct. at 1759.